J-S25035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL SANTIAGO | : | |
| | : | |
| Appellant | : | No. 2003 EDA 2020 |

Appeal from the Judgment of Sentence Entered June 16, 2020
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0005003-2018

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED SEPTEMBER 22, 2021**

Daniel Santiago (Santiago) appeals from the June 16, 2020 judgment of sentence imposed by the Court of Common Pleas of Lehigh County (trial court) following his negotiated guilty plea to indecent assault of a person under the age of 13 and statutory sexual assault.[1]  Santiago challenges the sufficiency of the evidence to support his designation as a Sexually Violent Predator (SVP) under Revised Subchapter H of the Sexual Offenders Registration and Notification Act (SORNA).  We affirm.

The trial court summarized the facts of this case as follows:

In April of 2018, [Mother] made reports to the Salisbury Police Department regarding sexual assaults against her daughters, A.S.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3126(a)(7) & 3122.1(b).

(age 14) and D.P. (age 10). She indicated that the assaults occurred the previous summer (2017) and that the perpetrator was her ex-boyfriend, [Santiago].

A.S. underwent a forensic interview at the Child Advocacy Center and during the interview indicated that [Santiago] began touching her two weeks before she finished the eighth grade, when she was 14 years old. The assaults continued through the summer. Specifically, A.S. reported that [Santiago] would enter her bedroom in the morning hours and would ask to give her a massage. While massaging A.S., [Santiago] would touch her breasts. She indicated that at other times he would come in and touch her vagina. She indicated that on at least one occasion he penetrated her vagina with his fingers.

A.S. indicated that at some point in time, [Santiago] had her perform oral sex on him and he masturbated in front of her. On other occasions, A.S. indicated that [Santiago] would lick her vagina. She further indicated that [Santiago] would tell her not to tell anyone. At the time, A.S. was 14 years old and [Santiago] was 29 years old.

D.P. was separately interviewed and indicated that one night during the summer of 2017, she awoke from sleeping to find [Santiago] in her bedroom. She indicated that she went back to sleep but [Santiago] returned to the bedroom. She stated that [Santiago] pulled her pants and underwear down and "touched her butt."

Trial Court Opinion, 11/30/2020, at 3-4. Santiago pled guilty to the above-mentioned offenses and the trial court ordered that he be assessed by the Sexual Offenders Assessment Board (SOAB). He was sentenced to an aggregate of one year less one day to two years less two days of incarceration followed by ten years' probation.

On September 18, 2020, Santiago proceeded to a hearing to determine whether he was an SVP.[2]  The Commonwealth and the defense stipulated to the admission of the written assessment by Dr. Veronique Valliere, Psy.D., (Dr. Valliere) of the SOAB in which she opined that Santiago was an SVP.  No other evidence was submitted at the hearing.  Santiago argued that Dr. Valliere's findings were not supported by clear and convincing evidence.  Following argument, the trial court determined that Santiago was an SVP.  He timely appealed and he and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Santiago argues that the trial court erred in designating him as an SVP because the Commonwealth did not present clear and convincing evidence that he suffered from a mental illness, disability or abnormality.[3]  He contends that Dr. Valliere's opinion was formed without speaking with him or performing any diagnostic testing or evaluation.[4]  He further argues that Dr. Valliere's diagnosis of "Other Specified Personality Disorder with Antisocial and

---

[2] Santiago waived his right to have the SVP hearing prior to sentencing. **See Commonwealth v. Schrader**, 141 A.3d 558, 561 (Pa. Super. 2016).

[3] The sufficiency of the evidence to support an SVP designation is a question of law and our standard of review is *de novo*. **Commonwealth v. Stephens**, 74 A.3d 1034, 1038 (Pa. Super. 2013).  Our scope of review is plenary and we view the evidence in the light most favorable to the Commonwealth as the prevailing party below. **Id.**

[4] Santiago declined to participate in the assessment on advice of his attorney. **See** Notes of Testimony, 9/18/20, at 18-20.

Narcissistic Traits" was too vague and unsupported to justify his SVP designation.

Under Revised Subchapter H of SORNA, the SOAB must assess all individuals convicted of sexually violent offenses to determine whether they should be classified as an SVP and subject to increased registration, notification and counseling requirements. *See* 42 Pa.C.S. § 9799.24. An SVP is an individual who has committed one of the enumerated offenses and has a "mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12. A mental abnormality is "[a] congenital or acquired condition . . . that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Id.*

When determining whether a particular offender is an SVP, the SOAB must examine numerous factors:

(1) Facts of the current offense, including:

    (i) Whether the offense involved multiple victims.
    (ii) Whether the individual exceeded the means necessary to achieve the offense.
    (iii) The nature of the sexual contact with the victim.
    (iv) Relationship of the individual to the victim.
    (v) Age of the victim.
    (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
    (vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.
(ii) Whether the individual completed any prior sentences.
(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.
(ii) Use of illegal drugs.
(iii) Any mental illness, mental disability or mental abnormality.
(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S. § 9799.24(b)(1)-(4). The SOAB then submits a written report of its determination to the district attorney, who may file a *praecipe* for a hearing on the matter. 42 Pa.C.S. § 9799.24(d), (e)(1). At the hearing, the trial court must determine whether the Commonwealth has proven by clear and convincing evidence that the offender is an SVP. 42 Pa.C.S. § 9799.24(e)(3). Clear and convincing evidence is "so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts at issue." *Commonwealth v. Stephens*, 74 A.3d 1034, 1039 (Pa. Super. 2013) (citation omitted, alteration in original).

While the SOAB must consider all factors in 42 Pa.C.S. § 9799.24(b) during its assessment, no single factor is required or dispositive. *Commonwealth v. Feucht*, 955 A.2d 377, 381 (Pa. Super. 2008). Instead, the trial court must determine by clear and convincing evidence that the defendant has a "mental abnormality" that makes him likely to engage in

- 5 -

predatory sexually violent offenses. 42 Pa.C.S. § 9799.12. "[T]he statute does not require proof of a standard or diagnosis that is commonly found and/or accepted in a mental health diagnostic paradigm." *Commonwealth v. Hollingshead*, 111 A.3d 186, 190 (Pa. Super. 2015) (citation omitted). A challenge to the validity of an expert's diagnosis of a mental abnormality is a challenge to the weight, not the sufficiency, of the evidence. *Id.* at 193. Thus, if a trial court finds the expert opinion to be credible and supported by facts of record, we may not disturb that credibility determination. *Id.* at 194.

As pointed out by the trial court, Santiago's challenge to the validity of Dr. Valliere's diagnosis of Other Specified Personality Disorder with Antisocial and Narcissistic Traits implicates the weight and not the sufficiency of the evidence. Trial Court Opinion, 11/30/2020, at 9-10; *see also Commonwealth v. Fuentes*, 991 A.2d 935, 944-45 (Pa. Super. 2010) (*en banc*) (holding that a challenge to an expert opinion rendered with a reasonable degree of professional certainty implicates the weight of the evidence, which is properly addressed by the trial court). Santiago offered argument on this point at the hearing and preserved a challenge to the weight of the evidence in his concise statement pursuant to Pa.R.A.P. 1925(b). *See* Notes of Testimony, 9/18/20, at 9-13; Concise Statement of Errors Complained of on Appeal, 11/9/20. However, he abandoned his weight claim on appeal and argues only that the determination was not supported by

sufficient evidence. As a result, any challenge to the weight of the evidence is waived. *See* Pa.R.A.P. 2116(a), 2119(a).

Moreover, our review of the record of the SVP hearing and Dr. Valliere's report confirms that the trial court's determination was supported by sufficient evidence. Dr. Valliere's report set forth detailed factual findings concerning the elements of a mental abnormality and the definition of predatory behavior, as well as each of the enumerated factors in Section 9799.24(b). In making her factual findings and reaching her professional opinions, she considered reports, court documents and other materials from all of Santiago's past and current criminal offenses; documents from Lehigh County Children, Youth and Families' involvement with Santiago; his presentence investigation report; his army discharge summary; PennDOT records; civil dockets; the letter from his attorney declining participation in the assessment; and documents related to past Protection From Abuse (PFA) orders filed against him. Regarding his non-participation in the process, Dr. Valliere explained: "Because the diagnosis of a personality disorder relies on the exhibition of pervasive and long-standing behavioral and interpersonal patterns, it is possible to make this diagnosis when a comprehensive view of records over a substantial period of the offender's life span is performed." Notes of Testimony, 9/18/20, Commonwealth Exhibit 1, at 3.

Based on the information set forth in Dr. Valliere's report, the trial court reasoned as follows:

We determined that the Commonwealth presented clear and convincing evidence that [Santiago] suffered from a mental abnormality, namely Other Specified Personality Disorder with Antisocial and Narcissistic Traits and that his behavior related to these charges was clearly predatory in nature. Dr. Valliere determined that [Santiago] was physically abusive to his paramour and the victims, had been arrested for criminal activity numerous times, had an unsteady job history, and suffers from substance abuse which related to his offense behavior. He admitted to being unfaithful in romantic relationships, violated probation supervision, and had been other than honorably discharged from the United States Army. His egotistical, immature, and irresponsible behaviors persisted throughout his life. [Santiago] has a history of abusing family members, both physically and after the instant facts, sexually. He has had multiple victims and is described as interpersonally exploitive.

Dr. Valliere opined that individuals with personality disorders "have a difficult time in treatment. Change is difficult for a number of reasons. First, the traits are characterological and difficult to change. Second, typically persons with personality disorders have little distress about their own behaviors and impact of them, decreasing the internal motivation to change." Personality disorders are "disorders of a foundational, chronic, and persistent nature." She also opined that the antisocial traits exhibited by [Santiago] "contribute to the likelihood of violent recidivism." Although "these traits do not necessarily contribute to the risk of recidivism of sexual violence," traits such as callousness, a lack of empathy, egocentricity, impulsivity, and aggression could make it more likely for an individual to be able to hurt another for their own gratification.

Dr. Valliere further opined that because [Santiago] abused the victims, whom he was raising as his own children, thereby abdicating his role as a parent and instead promoted a secretive, exploitive, and abusive relationship with A.S. and abused D.P., his behavior met the statutory definition of "predatory behavior."

Having determined that [Santiago] suffered from a mental disorder and engaged in predatory behavior, Dr. Valliere determined that [Santiago] met the criteria to be classified as [an SVP] under the Act. All of Dr. Valliere's opinions were rendered to a reasonable degree of professional certainty.

*\*\**

> After consideration of Dr. Valliere's determination of a mental abnormality and predatory behavior, a review of the facts contributing to Dr. Valliere's assessment, and the facts of the instant matter, this Court found by clear and convincing evidence that [Santiago] was a sexually violent predator.

Trial Court Opinion, 11/30/2020, at 12-13 (citations omitted). We agree. Following a review of all available documents concerning Santiago's history, Dr. Valliere opined with a reasonable degree of professional certainty that he met the diagnostic criteria for Other Specified Personality Disorder with Antisocial Traits. Notes of Testimony, 9/18/20, Commonwealth Exhibit 1, at 8. Her analysis was supported by reference to specific facts in Santiago's history and the documents available to her when performing the assessment. She explained that the personality disorder was "of a foundational, chronic, and persistent nature" that was associated with a likelihood of reoffending in the future. *Id.* The trial court credited Dr. Valliere's opinion. Viewing the evidence in the light most favorable to the Commonwealth, it was sufficient for the trial court to find by clear and convincing evidence that Santiago is an SVP. Accordingly, his issue has no merit.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/22/2021*